THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAUREEN FARINA and JOSEPH FARINA,** <br> **Plaintiffs** <br><br> v. <br><br> **MIGGYS CORPORATION FIVE & SIX d/b/a, MIGNOSI'S SUPER FOOD TOWN** <br> **Defendant** | NO. 3:09cv00141 <br><br> (Judge Munley) |

## MEMORANDUM

Before the court is the motion for summary judgment filed by Defendant Miggys Corporation Five & Six d/b/a Mignosi's Super Food Town ("defendant"). The motion has been fully briefed and is ripe for disposition.

## BACKGROUND

### Facts

This case involves a slip-and-fall accident suffered by Plaintiff Maureen Farina at a supermarket ("Food Town") operated by defendant in East Stroudsburg, Pennsylvania. (Def.'s Br. in Supp., Doc. 16 at 1). Food Town is a 25,000-square-foot store. (Id.) Maureen Farina and her husband Joseph (collectively "plaintiffs") entered Food Town on the morning of June 26, 2008 at approximately 11:00 a.m. to do some shopping. (Def.'s Motion for Summ. J., Doc. 13 at 1, ¶ 1). Ms. Farina was wearing cut-off pants, a sweatshirt, sandals, and a baseball cap at the time of the incident. (Id. at 2, ¶ 7). She claims that her sandals had a strap across the back, however this fact is contested by the testimony of assistant store manager, Leslie Goldfinger. (See id., citing Ms. Farina's Test. at 25; see also Mr. Goldfinger's Test. at 18). Neither of the plaintiffs

1

had been in Food Town on a prior occasion. (Def.'s Br. in Supp., Doc. 16 at 1). After the plaintiffs entered the store, they walked to the deli department. (Def.'s Motion for Summ. J., Doc. 13 at 1, ¶ 4). Maureen Farina then walked to the dairy aisle by herself. (Id., ¶ 5). After taking fifteen to twenty steps in the dairy aisle, Ms. Farina claims to have slipped and fallen to the floor. (Pls.' Brief in Opp., Doc. 21 at 2, ¶ 8). As a result, Ms. Farina claims to have fractured her right patella. (Id. at 7). She remained on the floor for approximately twenty minutes after her fall, and was transported from the store by ambulance. (Def.'s Br. in Supp., Doc. 16 at 2).

Ms. Farina described the tile floor in the dairy aisle as "light" in color. (Ms. Farina's Test. at 27). Although the plaintiff claimed that the lighting in the store was "bright" and that "the store wasn't that crowded," she did not see any substance on the floor in the area where she fell at any time prior to her fall. (Pls.' Brief in Opp., Doc. 21 at 2, ¶ 6; Def.'s Motion for Summ. J., Doc. 13 at 2, ¶ 9). While Ms. Farina was on the floor after she fell, she put her left hand on the floor and felt something "sticky and gritty." (Id., ¶ 10). At no time did she look at the color of the substance on the floor. (Id., ¶ 11; Pls.' Brief in Opp., Doc. 21 at 2, ¶ 11).

Plaintiff Joseph Farina was advised about the incident by a store employee and went to the dairy aisle where he found his wife on the floor. (Def.'s Br. in Supp., Doc. 16 at 2). He noticed a "yellow-orange slime" or "grime" on the floor in the immediate area around his wife, which he presumed to be mango or egg yolk. (Id. citing Mr. Farina's Test. at 10, 14, 17). He did not, however, see any fruit or egg shell in the area. (Id. citing Mr. Farina's Test. at 11, 16). He stated that slime was "within a one yard square area" in the center of the aisle, around his wife. (Id. citing Mr.

Farina's Test. at 14; Pls.' Brief in Opp., Doc. 21 at 12, citing Mr. Farina's Test. at 10,14).

Leslie Goldfinger was the assistant store manage at Food Town at the time of the incident. (Def.'s Motion for Summ. J., Doc. 13. at 3, ¶ 16). On June 26, 2008, his responsibilities encompassed a number of tasks including watching the floor for things such as debris and spills. (Def.'s Br. in Supp., Doc. 16 at 3 citing Mr. Goldfinger's Test. at 6-7; Pls.' Brief in Opp., Doc. 21 at 8). Additionally, Mr. Goldfinger said all department managers and store employees were to keep watch over the floors and make sure they were clean. (Def.'s Br. in Supp., Doc. 16 at 3 citing Mr. Goldfinger's Test. at 7-8, 14). Mr. Goldfinger "believe[d]" that there were three maintenance workers on duty that were supposed to sweep the floors, and clean up spills approximately once an hour and record these inspections on "sign-off sheets." (Id. citing Mr. Goldfinger's Test. at 7-8, 14; Def.'s Motion for Summ. J., Doc. 13. at 3). No schedule or "sign-off sheet" relating to this incident has been produced. (Pls.' Brief in Opp., Doc. 21 at 10-11).

Mr. Goldfinger recalled walking down the dairy aisle between fifteen to twenty minutes prior to the incident. (Mr. Goldfinger's Test at 15-16; Ms. Farina's Test. at 11-13). His purpose for being in the dairy aisle, however, was to speak with a vendor, not to inspect the floors. (Pls.' Brief in Opp., Doc. 21 at 3, ¶ 21). Furthermore, Mr. Goldfinger testified that he could not see the spot where Ms. Farina fell because it was almost 20 feet away from where he had been. See id. After Mr. Goldfinger was informed that a customer had fallen, he walked to the dairy aisle. (Def.'s Br. in Supp., Doc. 16 at 3). In the dairy aisle, Mr. Goldfinger claims to have found a piece of squashed pineapple, – which appeared to have been stepped on – he noticed a skid mark on the floor, and he discovered that the bottom of Ms.

3

Farina's sandal was wet.  (Def.'s Br. in Supp., Doc. 16 at 3, ¶ 22 citing Mr. Goldfinger's Testimony at 16-18).  Mr. Goldfinger also examined the floor, and did not find any moisture on the floor anywhere other than the area where the piece of pineapple was sitting.  (Mr. Goldfinger's Test. at 18).

Mr. Goldfinger testified that cut pineapple is only sold in sealed containers at the opposite end of the store, in the produce department. (Def.'s Motion for Summ. J., Doc. 13, at 3, 4, ¶¶ 24, 31).  Nevertheless, Mr. Goldfinger admitted that defendant was aware that the fruit cups were frequently opened by customers despite being taped shut.  (Mr. Goldfinger's Test. at 17).  In addition, Mr. Goldfinger stated that "a lot of grazing" occurred at Food Town – meaning that there was a customer practice by which customers would pick up grocery items and, ". . . from time to time, people throw things, you know, they'll try to eat things and throw the rest out and throw it on the floor." (Mr. Goldfinger's Test. at 7).

Following the June, 26, 2008 incident at Food Town, Ms. Farina underwent an "open reduction and internal fixation of the right patella with tension band construct, on July 2, 2008." (Pls.' Brief in Opp., Doc. 21 at 7). This was followed up by a continuous course of treatment with an orthopedist, and physical therapy through January 20, 2009.  (Id.)  A second surgery was performed on September 11, 2008 in order to remove the hardware in her knee from the first surgery.  (Id.)  Ms. Farina claims that she continues to suffer from stiffness and soreness and a limitation of her physical activities.  (Id.)  She now requires the use of a cane when walking.  (Id.)

**Procedural History**

Plaintiffs filed a complaint with this court on January 23, 2009. (Compl., Doc. 1).  The complaint raises claims for negligence and loss of consortium.  Id. at 2.  Following discovery, defendant filed the motion for

4

summary judgment being addressed here.

**JURISDICTION**

Plaintiffs Maureen and Joseph Farina are both citizens and residents of the state of New York. (Compl., Doc. 1, ¶ 1). Defendant Miggys Corporation Five & Six d/b/a Mignosi's Super Food Town is a Pennsylvania company with its principal place of business in the Commonwealth. The amount in controversy exceeds $75,000.00. Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1332. Because this court is sitting in diversity, the substantive law of Pennsylvania applies. Chamberlain v. Giampapa, 220 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**STANDARD**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n. 4 (3d Cir. 1997) (citing Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A

5

fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Before this Court is defendant's motion for summary judgment on Plaintiff Maureen Farina's claim of negligence under the theory of premises liability, and a related claim for loss of consortium. This claim arose out of a slip-and-fall incident that occurred at defendant's supermarket. Both parties agree that, under Pennsylvania law, "[a] prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." Krentz v. Consol. Rail Corp., 910 A.2d 20, 27 (Pa. 2007).

The standard of care a land owner owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. Carrender v. Citterer, 469 A.2d 120, 123 (Pa. 1983) (citing Davies v. McDowell Nat'l Bank, 180 A.2d 21 (Pa. 1962); Restatement (Second) of Torts §§ 328-343B (1965)). The parties agree that Ms. Farina was a business invitee at Food Town on June 26, 2008. (Pls.' Brief in Opp., Doc. 21 at 3). See Estate of Swift v. Northeastern Hosp., 680 A.2d

719, 723 (Pa. Super. Ct. 1997) ("a business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."). Additionally, it is uncontested that Ms. Farina did not discover or realize the danger prior to slipping in the dairy aisle. (Pls.' Brief in Op, Doc. 21 at 3). As such, defendant owed Ms. Farina a duty, as set forth in the Second Restatement of Torts, as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
> (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343 (1965); see also Blackman v. Fed. Realty Inv. Trust, 664 A.2d 139, 142 (Pa. Super Ct. 1995).

Pennsylvania courts apply this section of the Restatement differently depending on the involvement and knowledge of the defendant in creating and remedying the dangerous condition. If the "harmful transitory condition" is a "condition created by the possessor or those under his authority" then a plaintiff does not need to prove any notice for the defendant to be held liable. Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980). If a condition is one that the landowner knows has "frequently recurred", then a jury may find that the owner had actual notice of the condition. Id. When the evidence indicates that the condition was created by or was traceable to persons other than those that the landowner is ordinarily accountable for, a jury may not consider the landowner's liability without sufficient proof of actual notice of the condition or constructive notice – evidence that the condition existed for such a length of time that in the exercise of reasonable care the owner

7

should have known of the condition.  See id.  Proof of notice may be supported by direct or circumstantial evidence.  Moultrey, 422 A.2d at 594.  In summary, a plaintiff's claim must consist of evidence that tends to prove that a landowner knew, or in the exercise of reasonable care, should have known of the condition that caused harm.  Id. at 596.

Defendant acknowledges that it had a duty to keep its premises reasonably safe for its patrons, and that the plaintiff was injured as a result of a fall inside of its store.  Defendant maintains that it did not breach its duty to the plaintiff because it acted reasonably to prevent harms of this kind.  Plaintiffs do not present evidence, nor do they argue, that Food Town or its agents created the condition.  Thus, the question in this matter is whether evidence exists by which a jury could reasonably conclude that defendant had actual or constructive notice of the condition that caused Ms. Farina to fall.

### 1. Actual Notice

First, it must be determined if the evidence in this case, examined in the light most favorable to plaintiffs, would allow a jury to conclude that defendant had actual notice of the condition of the floor in the dairy aisle.  Although plaintiffs do not claim that defendant actually knew of the condition in the dairy aisle prior to the incident, plaintiffs argue that defendant had actual notice of the slippery floor in the dairy aisle due to a "recurring condition."  (Pls.' Brief in Opp., Doc. 21 at 10).  Specifically, plaintiffs point to Mr. Goldfinger's testimony that "a lot of grazing" occurs whereby customers consume items from store shelves and "throw the rest out and throw it on the floor."  (Id. citing Mr. Goldfinger's Test. at 7).  Similarly, Mr. Goldfinger testified that children throw items from fruit cups on the floor, and that "this happens a lot, you know."  (Id. citing Mr. Goldfinger's Test. at 16-17).  Based on defendant's knowledge of these

events, plaintiffs argue that Food Town took insufficient steps to protect their business invitees from those risks.

While it is true that a landowner's knowledge of recurring dangerous conditions will excuse a plaintiff's need to show constructive notice, it cannot be said that a recurring condition existed under these facts. Considering this matter a dangerous recurring condition would also conflict with the core principles of foreseeability and reasonableness essential to finding negligence under Pennsylvania law. The Supreme Court of Pennsylvania has concluded that:

> The mere presence of such refuse . . . does not in itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care; and, if it appears that proper efforts are made to keep clean the passageways so they may be safely traversed, he is not to be held responsible if some one accidently slips and falls. Where, however, it is disclosed, as here, that the dangerous condition, arising from the same cause, was not a mere chance occurrence, but so often repeated as to call for frequent notices to the owner, and on one occasion to the police, and the same situation was shown to have existed when the customer was hurt, we cannot say the jury was not justified in finding defendant failed in his legal duty.

Markman v. Fred P. Bell Stores Co., 132 A. 178, 180 (Pa. 1926).

In Markman, the plaintiff slipped on vegetable refuse on a wet platform near the entrance of the defendant's store. Id. at 179. Cabbage leaves and a piece of "fat meat" were found stuck to the bottom of her shoe. Id. Testimony was given claiming that the defendant washed many of its vegetables near the entrance of the store, causing refuse to build up near the entrance as it had on this occasion. Id. at 180. Complaints of refuse being found near the entrance to the store were brought to the attention of the owner on numerous occasions, and even to the police on one occasion. Id.

In another case, the Pennsylvania Supreme Court found that

9

evidence presented a question for a jury as to whether a store was negligent in not doing enough to prevent a patron from slipping on ice in the store's parking lot, where the store had knowledge that its parking lot would be covered with a dangerous accumulation of ice during the winter. See generally Morris v. Great Atl. & Pac. Tea Co., 121 A.2d 135 (Pa. 1956). In that case, the defendant used a snow plow to clear eight inches of snow from its parking lot, although the degree to which the snow was actually cleared from the lot was in question. Id. at 137. The snow thawed a few days later, creating snow, slush, and pools of water which later froze into "a rough, icy carpet of ruts, ridges and mounds 3 to 4 inches high." Id. Plaintiffs alleged that the defendant did not do enough to remedy or put the plaintiff on notice of the icy condition that resulted after the thawed snow froze into ridges of ice. Id.

There, the court found dangers in an open parking lot after a winter storm in Pennsylvania to be so obvious that, ". . . [the] owner or custodian of an open parking lot receives notice every winter, and possibly many times during the winter [of dangers to its patrons.]" The court stated, "[t]his is so palpable a reality that notice of it could not be more directly brought home to the involved proprietor if it were written in the skies." Id. at 138. "With this prescience of inevitable pedestrian danger in the area under the defendant's supervision and control, it was a question of fact for the jury whether the defendant here did anything, or enough, in an endeavor to prevent accidents which, in the very sequence of inevitable phenomena, could easily occur." Id.

The present case differs factually from the cases inferring actual notice from a recurring dangerous condition. Most notably, the dangerous condition here has not occurred so often that it has became "so palpable a reality that notice of it could not be more directly brought home to the

involved proprietor if it were written in the skies." While pineapple and other fruit have been found on the ground on multiple occasions, the plaintiffs have not asserted that store patrons slipping on fruit has become an epidemic at Food Town.

Inferring notice because small pieces of fruit have made their way onto the ground via third parties would extend this doctrine far beyond its use in precedent. In <u>Markman</u>, the recurring dangerous condition from washing vegetables does not appear to have been created by third parties, but instead by the store's employees, or at least on store property to directly benefit the defendant. Here, defendant tries to prevent hazardous fruit spills from occurring by sealing the containers. Likewise, defendant considers "grazing" to be retail theft, and does not benefit from the activity, but is injured financially by it. Meanwhile, notice was inferred in <u>Morris</u> where common sense and life experience was thought to be enough to put the defendant on notice of the dangers that a parking lot may present after a heavy snow fall. Just because actual notice may be inferred for an eight inch snow fall across a parking lot, it does not follow that actual notice may be inferred for a far less conspicuous, one-square-yard hazard in a 25,000-square-foot store.

Unlike in <u>Markman</u> and <u>Morris</u>, here the defendant has also taken steps to prevent future hazards to its patrons. Defendant has made several efforts to remedy this dangerous condition by sealing the fruit containers to prevent customers from opening them in the store, and by creating a schedule for the maintenance department to conduct hourly inspections.

Anyone in the food business may find the occasional food item on the floor from time to time, despite exercising reasonable care. See <u>Markman</u>, 132 A. at 180. When reasonable preventive measures and

remedies are enacted, liability should not follow faultless "accidents" in the purest sense of the word.  See Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 610 (Pa. 1965) (citing Markman,132 A.2d at 180).  When a dangerous floor becomes the status quo, however, it is fair to infer actual notice.  See Markman, 132 A. at 180.

Here, reasonable corrective measures have been instituted to prevent hazardous conditions that have occurred in the past, and the condition has not remained pervasive or obvious, thus it cannot be said that the defendants had actual notice by means of knowledge of a recurring dangerous condition.  This would import hints of res ipsa loquitur in the context of slip-and-falls – a notion which has been flatly rejected by the courts.  See Neve v. Insalaco's, 771 A.2d 786, 789 (Pa. Super. Ct. 2001) (stating that res ipsa loquitur does not apply when store patrons become injured from transitory dangers or in slip-and-fall debris cases).  A plaintiff must show that a land owner has deviated from a reasonable duty of care under the existing circumstances.  See Zito v. Merritt Outlet Stores, 647 A.2d 573, 575 (Pa. Super. Ct. 1994) (emphasis added).  The law does not impose a requirement that defendant must be an insurer of the safety of its customers.  See Myers v. Penn Traffic Co., 606 A.2d 926 (Pa. Super. Ct. 1992).

### 2. Constructive Notice

This court has concluded that defendant did not have actual notice of the condition of the dairy aisle floor, thus, the determinative inquiry in this matter is whether defendant had constructive notice of that condition. "[W]hat [] amount[s] to constructive notice[] of a defective or dangerous condition[] existing upon a defendant's premises, necessarily varies under the circumstances of each case."  Loeb v. Allegheny County, 147 A.2d 336, 338 n.2 (Pa. 1959) (quoting Lanni v. Pennsylvania R.R., 88 A.2d 887,

889 (Pa. 1952)). Courts use several factors to determine whether a defendant store owner had constructive notice of a hazardous condition including:

> (1) the time elapsing between the origin of the defect and the accident; (2) the size and physical condition of the premises; (3) the nature of the business conducted thereon; (4) the number of persons using the premises and the frequency of such use; (5) the nature of the defect and its location on the premises; (6) its probable cause; and (7) the opportunity which defendant, as a reasonably prudent person, had to [discover and] remedy it.

Id. (alternation in original).

"[O]ne of the most important factors to be take into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). This court acknowledges that evidence as to the duration that a hazardous condition existed prior to an accident is necessary before constructive notice may be inferred. See Smith v. Barnes & Noble Booksellers, No. 08-1974, 2010 WL 2195942 (M.D. Pa. May 27, 2010) (granting summary judgment where no evidence as to duration existed, disallowing any inference as to constructive notice of hazard). In other words, the hazardous condition "must exist for such a length of time that in the exercise of reasonable care, the owner should have known of it." Moultrey, 422 A.2d at 596.

If a hazard exists for a very short period of time before causing an injury, then the possessor of the land, may 'even in the exercise of reasonable care,' not be able to discover the hazard, and thus would owe no duty to protect invitees from such a hazard. Craig v. Franklin Mills Assoc., L.P., 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) (citing Restatement (Second) of Torts § 343 (1965)). Likewise, what is a "very short" period of time will vary depending on the other circumstances of the

13

dangerous condition and defendant's actions or inaction. See David by Berkeley v. Pueblo Supermarket of St. Thomas, 740 F.2d 230 (3d Cir. 1984) (finding that a jury could reasonably infer that cottage cheese had been on the floor of a supermarket for an unreasonable amount of time based on testimony that it had been there since "about two hours ago-an hour and a half ago").

The duration element of constructive notice is often an obstacle for plaintiffs bringing slip-and-fall claims. On that issue, Rumsey v. Great Atl. & Pac. Tea Co. represents the most generous position. 408 F.2d 89 (3d Cir. 1969). In that case, a plaintiff slipped in a busy area of the store on "brown, wilted," and "old" lettuce. Id. at 89. She testified that the pieces of lettuce were "crushed" and were "small pieces, like it would be torn up in a salad . . . They were old. They weren't fresh." Id. Based on these characteristics, the court determined that the hazardous pieces of lettuce had been on the floor long enough to give the defendant constructive notice of their presence. Id. at 91. Similarly, Ramsey discussed other cases that used circumstantial evidence including accumulations of dust, dirt, and footmarks in hazardous grease spots, to determine whether sufficient evidence of duration existed to send these matters to a jury. Id. (citing Mack v. Pittsburgh Rys. Co., 93 A. 618, 619 (Pa. 1915) (finding sufficient evidence of duration through circumstantial evidence to send question to jury); Lanni, supra (finding insufficient evidence to send question to jury). Courts in the Eastern District of Pennsylvania have also found these arguments to be persuasive. Hower v. Wal-Mart Stores, Inc., No. 08-1736, 2009 WL 1688474, *7 (E.D. Pa. June 16, 2009) (citing Evans v. Canteen Corp., No. 94-2381, 1995 WL 355231, *3 (E.D. Pa. June 13, 1995) (stating that "[a]ccumulation of dirt or debris in a spilled area may establish that it has been there sufficient time to give constructive notice")). Both parties

14

recognize tracking and dirt as proper evidence to demonstrate constructive notice.  (See Def.'s Br. in Supp., Doc. 16 at  9; see also Pls.' Brief in Opp., Doc. 21 at 12).

Under these particular facts, this court believes that the "sticky" and "gritty" characteristics and appearance of "grime" in this hazard, among other characteristics, are sufficient evidence of constructive notice to defeat defendant's motion for summary judgment.  (See Def.'s Motion for Summ. J., Doc. 13 at 2, ¶ 10 citing Ms. Farina's Testimony at 36-7; see also Mr. Farina's Test. at 10, 14, 17).  The evidence here, viewed in the light most favorable to the plaintiff, suggests that there was approximately one square yard of a yellow-orange slime, and a piece of pineapple in the dairy aisle where Ms. Farina had slipped.  (Pls.' Brief in Opp., Doc. 21 at 12, citing Mr. Farina's Testimony at 10,14; Def.'s Motion for Summ. J., Doc. 13 at 3, ¶ 22 citing Mr. Goldfinger's Test. at 16-18).  Ms. Farina testified that she did not see anything prior to her fall.  (Def.'s Motion for Summ. J., Doc. 13 at 2, ¶ 9).  She further testified that while she was lying on the ground after the fall, she "felt something sticky or gritty" on the floor.  (Id. at 2, ¶ 10 citing Ms. Farina's Test. at 36-7).  Mr. Farina described the substance in the dairy aisle as a "grime."  (See Mr. Farina's Test. at 14).

Shortly after the incident, Mr. Goldfinger had testified that he saw a skid mark on the floor, and that he only found moisture on the floor where the squashed pineapple was laying and on the bottom of Ms. Farina's sandal.  (Def.'s Motion for Summ. J., Doc. 13 at 3, ¶ 22 citing Mr. Goldfinger's Test. at 16-18).  Although Mr. Goldfinger testified that he had been in the aisle fifteen to twenty minutes prior to the incident, he admitted that he was not able to see the location where incident later occurred.  (Pls.' Brief in Opp., Doc. 21 at 3, ¶ 21).  Mr. Goldfinger testified to a policy of checking the aisles every hour, however, plaintiffs question how credible

this testimony is in light of a missing log from that day. (Pls.' Brief in Opp., Doc. 21 at 5-6, ¶ 3). Additionally, the store was not very crowded and its lighting was described as "bright." (Pls.' Brief in Opp., Doc. 21 at 2, ¶ 6).

Evaluating the evidence in the light most favorable to the plaintiffs, it is plausible that a reasonable jury could find sufficient facts to establish constructive notice. The fact that there was no moisture on the floor besides where the piece of fruit was, and that the floor was described as "sticky", "gritty", and a "grime" is enough to show that this substance may have been on the floor for an unreasonable length of time. There was also a skid mark on the floor from which a reasonable jury could conclude that it may have come from someone other than Ms. Farina. Furthermore, the slime was allegedly one square yard in size in the middle of a frequently used aisle that is also a likely area for dangerous floor conditions. Although defendants claim that they had a schedule to check the condition of the aisles every hour, whether there is sufficient evidence to support this proposition is a credibility question for the jury. While the store was 25,000 square feet, it was not crowded at the time of the incident, the store was bright, and there were employees in this store with specific duties of making sure these hazards were remedied

Such a large sticky, grimy floor spot that lacks moisture indicates a passage of time, just as the wilting, browning, and tearing of lettuce on a store floor does. It would not only take time for this spot to accumulate grime, but also for moisture to evaporate. This is especially true given that some moisture remained around the crushed pineapple and on Ms. Farina's sandal, but not around the yellow-orange slime, when Mr. Goldfinger arrived in the dairy aisle.

Premised on pineapple being found on the ground, the color of the spot, and Mr. Goldfinger's testimony as to the practice of some of its

16

patrons, it is certainly possible that this spot was derived from fruit or fruit juice. There is no greater inference needed to infer that one square yard of fruit or fruit juice needed time to become sticky, grimy, and lose its moisture, than for the court in Rumey to assume that the lettuce being displayed was not already brown, wilted, and in torn into smaller pieces. See Craig v. Franklin Mills Assoc., Inc., 555 F. Supp. 2d 547, 551 n.4. While a store might sell brown, wilted lettuce, one would be hard pressed to find a yellow-orange gritty slime or grime on sale at any grocery store.

While this dangerous condition may not have been quite "so palpable a reality" as if notice of it was "written in the skies," sufficient evidence of constructive notice exists for this question to be offered to a jury. The sticky and grimy condition of the substance, the skid mark on the floor, the fact that the store was not busy at the time of the incident while several employees were specifically assigned to maintain the floors, defendant's knowledge of past customer practice leading to dangerous floor conditions, and the location of the hazard in a well-lit dairy aisle all weigh against granting defendant's motion.[1] Because reasonable questions of material fact remain as to whether defendant may have breached its duty to Ms. Farina, defendant has not met its burden necessary for summary judgment.

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment will be denied. An appropriate order follows.

---

[1] See supra p. 13 for the Lanni factors discussed here.

# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAUREEN FARINA and JOSEPH FARINA,**<br><br>　　**Plaintiffs**<br><br>　　v.<br><br>**MIGGYS CORPORATION FIVE & SIX d/b/a, MIGNOSI'S SUPER FOOD TOWN**<br><br>　　**Defendant** | NO. 3:09cv00141<br><br>(Judge Munley) |

## ORDER

AND NOW, to wit, this 28th day of July 2010, the defendant's motion for summary judgment (Doc. 13) is hereby **DENIED**.

　　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　　**s/ James M. Munley**

　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　　**United States District Court**